IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 19, 2006 Session

## STATE OF TENNESSEE v. BARRY C. MELTON

**Direct Appeal from the Circuit Court for Warren County**
**No. F-9428     Larry B. Stanley, Jr., Judge**

---

**No. M2005-02752-CCA-R3-CD - Filed August 25, 2006**

---

The defendant, Barry C. Melton, was convicted of facilitating the manufacture of methamphetamine, a Class D felony, and possession of methamphetamine and possession of drug paraphernalia, Class A misdemeanors. The trial court sentenced him as a Range I, standard offender to two years for the felony conviction and eleven months, twenty-nine days for each of the misdemeanor convictions, for a total effective sentence of two years, with sixty days to be served in confinement and the balance on probation. On appeal, he argues that the evidence is insufficient to support his facilitation conviction and that he should have been granted full probation. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, J., and J.S. DANIEL, SR. J., joined.

Michael D. Galligan and John P. Partin (on appeal), and Robert W. Newman (at trial), McMinnville, Tennessee, for the appellant, Barry C. Melton.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Clement Dale Potter, District Attorney General; and Larry G. Bryant, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On April 4, 2003, the Warren County Grand Jury returned a three-count indictment charging the defendant with the manufacture of methamphetamine, possession of methamphetamine, and possession of drug paraphernalia.

At the July 19, 2005, trial, Investigator Mark Martin of the Warren County Sheriff's Department testified that he had investigated over 200 methamphetamine labs and described the smell associated with those labs as "a real strong acidy smell." He said that on February 13, 2003, he and Investigator Patrick Ray went to an address on Bryan Nelson Road trying to locate the defendant. As they knocked on the door of the metal barn which was located about 300 to 400 yards off the dirt gravel road, they smelled "a very strong odor of methamphetamine." After no one answered their knock, the officers drove to a nearby location to observe activity on the property and subsequently saw the defendant's vehicle leave the property and cross the center line of the road. The officers followed the defendant's vehicle and, after noticing that a taillight was not working, stopped it. Investigator Martin said he detected a strong "meth odor" on the defendant's person and radioed for Canine Officer Dewayne Jennings to respond to the scene. Officer Jennings' dog alerted to the defendant's vehicle, and the vehicle was searched. Investigator Martin subsequently obtained a search warrant for the Bryan Nelson Road property, and pots, pans, glass jars, and a hot plate were discovered inside the barn.

On cross-examination, Investigator Martin said that two vehicles were parked in front of the barn and that three or four vehicles that "looked like they had been there a while" were parked in the back. He said there was "junk" around the building and acknowledged there was nothing to stop people from dumping trash on the property. He said that one of the burn piles they discovered on the property "was not old. The paper was still left on some of the containers. If it would have been there for a month, it would have rotted off." However, he acknowledged there was no proof that the defendant had burned any of the items in the burn piles. He also acknowledged that no methamphetamine or ingredients used to make methamphetamine were found on the property but said there were empty containers of ingredients used to make the drug. Investigator Martin said that the smell on the defendant's person, as well as the finished product found in his pocket, connected him to the manufacture of methamphetamine. Martin added that because methamphetamine itself does not have an odor, a person has "to be around the manufacturing process itself to get that odor on you."

Canine Officer Dewayne Jennings testified that his narcotics detecting dog alerted to the driver's side of the defendant's vehicle. Officer Jennings then searched the vehicle and discovered, under the driver's seat, a set of digital scales, a three-inch straw, a small metal spoon, a wooden pipe, and a set of hemostats. A search of the defendant's person revealed a plastic bag containing a white powder which Officer Jennings believed to be methamphetamine.

Investigator Patrick Ray of the Warren County Sheriff's Department, who was accepted by the trial court as an expert in the identification and disassembling of methamphetamine labs, testified there was "an odor that is associated with the manufacture of methamphetamine" coming from the metal building when they arrived on the defendant's property. After receiving no answer to their knock on the front and back doors, the officers drove to a nearby location and later saw several vehicles coming to and going from the property. After observing a truck with an inoperative rear light leave the property and cross the center line of the road, the officers stopped the truck, and Investigator Ray approached the driver's side. He asked the defendant, who was the driver, to

perform field sobriety tasks and noticed there was a male and a female passenger in the truck. Investigator Ray said there was "a strong odor of the same odor that you get when you manufacture methamphetamine" on the defendant's clothing.

Investigator Ray identified photographs of items found inside the building and outside on the property, including three empty pots, a bottle of hydrogen peroxide, a hot plate, glass jars, a bottle of gas line antifreeze that had been cut in half, Coleman fuel cans, Brake Clean cans, a bottle of pseudoephedrine, coffee filters, tubing with a bottle cap taped to it, striker plates from matchbook covers, a stained glass bottle, a flask with duct tape and electrical tape around it, half-filled bottles of iodine, and a glass jar containing white residue. Investigator Ray acknowledged there was no evidence linking the defendant to the items found on the property and said he did not know how long the items had been there. He said that the defendant admitted "going to the burn piles" on the property and claimed ownership of all of the items found in his truck.

Captain Tommy Myers of the Warren County Sheriff's Department testified that he interviewed the defendant after advising him of his rights. Captain Myers read the defendant's statement wherein the defendant said he owned the "shop" on Bryan Nelson Road and had been there the previous night to help Charlie Leveritt work on April Brady's truck. The defendant denied that he had ever "cooked dope" and said that Josh Melton, April Brady, Chris Moore, his father, and his brother, Chad, had keys to the shop.

Adam Gray testified that in February 2003 he was employed by the Tennessee Bureau of Investigation Crime Lab and that his analysis of the sample submitted in the defendant's case revealed that it was 1.5 grams of methamphetamine.

Barry Nelson Melton, the defendant's father, testified that he previously had owned the defendant's property and that the barn was about one-fourth mile from the road. He said that in February 2003, they had experienced problems with trespassers on the property and a planer had been stolen from the barn, but he did not report the trespassing or the theft to the police. He said he went to the barn unannounced once or twice a week during February 2003 and never saw the defendant or anyone else manufacturing drugs. Melton said that there were abandoned vehicles and "a bunch of junk" on the property, that people had dumped trash there for a number of years, and that the burn piles had been there for years. He said that he and his wife had stored some pots and pans and glass jars in the barn and that his son, Chad, and Josh Melton had keys to the building.

Gail Melton, the defendant's mother, testified that the barn had become a storage place for the family and that the property was "junked up." She said that there was a big sinkhole on the property where people had dumped trash and that there were burn piles in the back of the barn. She had gone to the property unannounced on previous occasions and never saw or smelled anything associated with the manufacture of drugs; however, she could not recall the last time she had been on the property prior to the defendant's arrest.

Investigator Ray, recalled by the State as a rebuttal witness, testified that he searched the sinkhole on the defendant's property and that no "meth trash" was found in it.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to support his conviction for facilitating the manufacture of methamphetamine, saying "the investigators admitted that they had no evidence linking [him] to any of the items found on his property which formed the basis of the manufacture of methamphetamine charge and subsequent conviction of the lesser included offense of facilitation of manufacture of methamphetamine."

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The law regarding the offense of criminal responsibility for facilitation of a felony is set out in Tennessee Code Annotated section 39-11-403, which provides:

(a) A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony.

(b) The facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged.

The Sentencing Commission Comments for this section state that:
[This] section states a theory of vicarious responsibility because it applies to a person who facilitates criminal conduct of another by knowingly furnishing substantial assistance to the perpetrator of a felony, but who lacks the intent to promote or assist in, or benefit from, the felony's commission.

A defendant charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party. The lesser punishment is appropriate because the offender, though facilitating the offense, lacked the intent to promote, assist or benefit from the offense.

Applying this statute in State v. Parker, 932 S.W.2d 945 (Tenn. Crim. App. 1996), this court held that before an accused can be convicted of facilitation of a felony, the State has to prove: (1) the commission of a specified felony; (2) that the accused knew another person was going to commit a specified felony; and (3) that the accused knowingly furnished substantial assistance in the commission of the felony although the accused did not possess the requisite intent to be guilty of the felony. Id. at 950-51.

In the present appeal, the evidence, in the light most favorable to the State, established that Investigators Martin and Ray detected the strong smell associated with the manufacture of methamphetamine on the defendant's person when they stopped his vehicle. Furthermore, 1.5 grams of methamphetamine was recovered from the defendant's pocket. A subsequent search of the defendant's property yielded a similar smell and numerous items associated with the manufacture of methamphetamine. Although the defendant argues that his parents provided explanations regarding some of the items found on his property, the jury, by its verdict, accredited the testimony of the investigators, as was its right. Accordingly, we conclude that the evidence was sufficient to support the defendant's conviction for facilitating the manufacture of methamphetamine.

## II. Denial of Full Probation

The defendant argues that the trial court erred in sentencing him to serve sixty days in confinement, rather than sentencing him "to full probation or community corrections without requiring any service of jail time."

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210. The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

A defendant is eligible for probation where the sentence received by the defendant is eight years or less, subject to some statutory exclusions not applicable here. See Tenn. Code Ann. § 40-35-303(a). Although full probation must be automatically considered by the trial court as a sentencing alternative whenever the defendant is eligible, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Cmts.; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). On appeal, a defendant seeking full probation bears the burden of showing that the sentence imposed is improper and that probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995). Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). The trial court may also appropriately consider the defendant's candor and willingness to accept responsibility for his or her actions when considering whether probation should be granted, as these reflect upon the defendant's potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

At the conclusion of the sentencing hearing, the trial court determined that the defendant should serve sixty days of his two-year sentence in confinement:

> [T]he Court has considered whether or not split confinement or straight probation is warranted in this particular case. As the defendant knows and both counsel know .

. . methamphetamine is an extremely direly serious problem here in this community and this portion of the state. It's a scourge on our citizens and is something that has just overwhelmed us over the past five to ten years.

I've considered [the defendant's] likelihood for rehabilitation, his likelihood of completing probation, his ability to abide by the terms of that, his work history and social history. Having taken all that into consideration, along with the nature of the offense, I find that he should serve 60 days in the Warren County Jail with the balance on probation.

A trial court may base a sentence of confinement on any of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

The presentence report reflects that the defendant's only prior conviction was for passing a worthless check for which he received judicial diversion and successfully completed. The probation officer who prepared the report testified at the sentencing hearing that she had problems getting the defendant to speak to her. The defendant chose to make a statement at the sentencing hearing and said he did not feel that he was guilty of the facilitation charge and that he "didn't do everything they said [he] did." The trial court determined that, based on the defendant's potential for rehabilitation and the seriousness of the methamphetamine problem in the community, a sentence of split confinement was appropriate. We conclude that the record supports the trial court's determination.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE